UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| M. Lindaya | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner: | Attorneys Present for Respondents: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE (DKT. 2)**

### I.      Introduction

On December 8, 2025, Petitioner filed this action (Dkt. 1) and an *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause ("Motion" (Dkt. 2)). Through the Motion, he seeks an order directing that he be provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of the Temporary Restraining Order ("TRO"), with instructions that the immigration judge has jurisdiction under 8 U.S.C. § 1226(a) to consider whether to approve the issuance of a bond. Dkt. 2 at 27. The Government filed an opposition to the Motion on December 11, 2025. Dkt. 7.

For the reasons stated in this Order, the Motion is **GRANTED**.

### II.     Factual Background

In support of the Motion, Petitioner contends that he is a 54-year-old man who entered the United States in or around October 1998. Dkt. 2 at 11. He has five children in the United States, one of whom is a minor. *Id.* Three of his children are United States citizens, and two are Deferred Action for Childhood Arrivals ("DACA") recipients. He has two grandchildren, both of whom are United States citizens. *Id.* He is the primary financial provider for several of his family members who reside with him. *Id.* at 12. Petitioner has no criminal record. *Id.*

In 2021, Petitioner contracted COVID-19. Since then, he has had many serious health issues, for which he has been seeing multiple specialists. He continues to have complications with his lungs as well as high blood pressure, high cholesterol, joint pain and optical issues. *Id.*

On November 7, 2025, Petitioner was arrested by immigration authorities and placed in removal proceedings. *Id.* at 10. He is currently being held at the detention center in Adelanto, California. *Id.* Prior to this arrest, Petitioner has never had any interactions with immigration officials. *Id.* at 11. While in detention, Petitioner's health conditions have worsened. He has been unable to meet with his health care specialists or similar providers, and he has not been allowed access to all of his medications. *Id.*

Petitioner is scheduled for a hearing in his removal proceedings on December 22, 2025. *Id.* at 10. His

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
|---|---|---|---|
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

Notice to Appear alleges that he entered the United States without inspection or admission. Dkt. 1-5 at 7. He has not been provided with the opportunity for a bond hearing. *See* Dkt. 1 ¶ 51.

**III.     Whether There is Jurisdiction Over this Action**

Respondents contend that there is no subject matter jurisdiction over this action under several subsections of 8 U.S.C. § 1252, which governs judicial review of certain immigration-related decisions. Dkt. 7 at 12–15. Specifically, Respondents argue that § 1252(g) and § 1252(b)(9) remove the general habeas jurisdiction of a district court conferred by 28 U.S.C. § 2241. Dkt. 7 at 12–15. Respondents' jurisdictional arguments are addressed in the following discussion.

    A.     8 U.S.C. § 1252(g)

Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).

The Government contends that § 1252(g) applies to this action because Petitioner's habeas challenge "stem[s] from [his] detention during removal proceeding," notwithstanding that Petitioner does not directly challenge a decision to "commence proceedings, adjudicate cases, or executive removal orders." Dkt. 7 at 13. The Government's broad interpretation of § 1252(g) is unpersuasive.

The Supreme Court has made clear that the jurisdictional limits imposed by Section 1252(g) are "narrow," and apply only to the "review of cases 'arising from' decisions 'to commence proceedings, adjudicate cases, or execute removal orders.' " *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (construing the jurisdictional bar of Section 1252(g) as limited to "three discrete actions" and explaining that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings"). The Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294. Moreover, § 1252(g) only bars review as to discretionary decisions. *See Arce v. United States*, 899 F.3d 796, 801 (9th Cir. 2018) ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated."). That is because § 1252(g) is a "discretion-protecting provision," which is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485.

Petitioner does not challenge any of the three specific discretionary actions stated in § 1252(g).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

Instead, Petitioner challenges his detention without a bond hearing. Notwithstanding § 1252(g), courts may review a noncitizen's allegedly unlawful detention. Although such detention is closely linked to the Government's efforts to deport a person, a detention order "is not itself a decision to 'execute removal orders' and thus does not implicate section 1252(g)." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000).

Further, the gravamen of Petitioner's claim is that Respondents lack authority to detain him without a bond hearing. Thus, he argues that he may only be detained pursuant to § 1226, a section that provides him with the right to such a hearing. Petitioner does not challenge any discretionary determination made by Respondents. Consequently, the "purely legal question" raised here -- whether Petitioner has been lawfully detained pursuant to § 1225 or § 1226 -- falls outside of the narrow scope of § 1252(g), which is intended to protect against judicial review of discretionary decisions. *See United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) ("consideration of a purely legal question, which does not challenge the Attorney General's discretionary authority, supports jurisdiction"); *Arce*, 899 F.3d at 801 ("Where the Attorney General totally lacks the discretion to effectuate a removal order, § 1252(g) is simply not implicated."). Respondents do not cite any case that has held that § 1252(g) bars jurisdiction over habeas claims challenging the Government's interpretation of § 1225 and § 1226.

This outcome is also consistent with the determinations by other district courts that have considered similar habeas claims. Thus, they have also concluded that § 1252(g) poses no jurisdictional limitation under the present circumstances. *See, e.g.*, *Gonzalez v. Noem*, No. 25-CV-02054, 2025 WL 2633187, at *3 (C.D. Cal. Aug. 13, 2025); *Garcia v. Noem*, No. 25-CV-02771, 2025 WL 2986672, at *4 (C.D. Cal. Oct. 22, 2025); *Estrada v. Lyons*, 25-CV-11002, 2025 WL 3438562, at *3 (C.D. Cal. Nov. 26, 2025); Pop v. Noem, No. 25-CV-02589, 2025 WL 3050095, at *3 (C.D. Cal. Oct. 3, 2025); *see also Eliseo A.A. v. Olson*, No. 25-CV-3381, 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (collecting cases).

For these reasons, § 1252(g) does not present a jurisdictional bar to judicial review in this action.

    B.    8 U.S.C § 1252(b)(9)

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

Respondents contend that § 1252(b)(9) precludes judicial review in this action because "any issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process[.]" Dkt. 7 at 14 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). Under § 1252, a petition for review may only be heard by a federal Circuit Court. Respondents

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

argue that because Petitioner's detention "arises from DHS's decision to commence removal proceedings," this Court lacks jurisdiction over the action. Dkt. 7 at 13.

Respondents' position is unpersuasive. In *Jennings*, the Supreme Court held that § 1252(b)(9) is not a bar to justiciability where a petitioner "[is] not asking for review of an order of removal; . . . challenging the decision to detain them in the first place or to seek removal; or . . . challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294. Here, there is no removal order to challenge. Nor is Petitioner challenging the decision to detain him or seek his removal, or any part of the removal proceedings or process. Accordingly, § 1252(b)(9) does not present a jurisdictional bar.

**IV.     Whether the Requested Relief is Warranted**

   A.     Legal Standards

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Fed. R. Civ. P. 65(b) sets forth the standards for the issuance of a TRO. They are fundamentally the same as those that apply to a request for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In determining whether to grant such relief, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). The moving party has the burden of persuasion. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006).

To obtain either a TRO or a preliminary injunction, the moving party must show the following: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of immediate or prompt relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. Where the non-moving party is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

The Ninth Circuit applies a "sliding scale" approach to the requirements necessary for interim injunctive relief. Accordingly, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimental v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Likelihood of success on the merits is "the most important factor" in determining whether interim, injunctive relief is warranted. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 990 (9th Cir. 2020). If the moving party fails to show a likelihood of success on the merits, the court "need not consider the remaining three [*Winter* elements]." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013)).

Alternatively, where a plaintiff establishes "serious questions going to the merits," and demonstrates "a balance of the hardships that tips sharply towards the plaintiff," a TRO or preliminary injunction may be warranted "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell* ("*Cottrell*"), 632 F.3d 1127, 1135

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

(9th Cir. 2011). *Cottrell* determined that this "serious questions" test, which requires a lesser showing as to success on the merits than the "likelihood of success" test, continues to apply following *Winter* when two conditions are met. *First*, the balancing of the equities must tip "sharply" in favor of movant. *Id. Second*, the other *Winter* factors -- irreparable harm and the public interest -- must be established. See *Farris v. Seabrook*, 677 F.3d 858, 864-65 (9th Cir. 2012).

      B.     Application

Petitioner contends that he has been detained without a bond hearing in violation of 8 U.S.C. § 1226(a), because he has been present and residing in the United States since October 1998 without having been inspected by immigration authorities. Dkt. 2 at 8-9. He seeks a TRO enjoining Respondents from continuing to detain him unless he is provided an individualized bond hearing before an immigration judge, with instructions that the immigration judge has jurisdiction under 8 U.S.C. § 1226(a) to consider whether a bond is appropriate. *Id.* at 10. The elements of the *Winter* analysis are addressed in the following discussion.

          1.     <u>Likelihood of Success on the Merits</u>

              a)     Application of 8 U.S.C. § 1226

Petitioner is likely to succeed on the merits of his claim that he is entitled to a bond hearing before an immigration judge under 8 U.S.C. § 1226(a). This statute "authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Noncitizens who have been detained under § 1226 are entitled to certain procedural protections, including "bond hearings at the outset of detention." *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Section 1226(a) provides "several layers of review of the agency's initial custody determination . . . the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change.' " *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *7 (C.D. Cal. Nov. 20, 2025) (citing § 1226(a)).

On July 8, 2025, the Government issued an internal policy deeming all individuals arrested in the United States and charged with being inadmissible as "applicants for admission" under 8 U.S.C. § 1225(b)(2)(A), regardless of how long they have been present in the United States or whether they have been inspected. *See* Dep't of Homeland Sec., Interim Guidance Regarding Detention Authority for Applicants for Admission (July 8, 2025). Under § 1225(b)(2)(A), "applicants for admission" are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a). "Applicants for admission" do not qualify for the due process protections of § 1226(a), and are typically " 'ordered removed without further hearing or review' pursuant to an expedited removal process." *Jennings*, 583 U.S. at 287 (citing § 1225(b)(1)(A)(i)).

In *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 221 (BIA 2025), the Board of Immigration Appeals ("BIA") adopted the Government's position. The BIA construed the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, to categorize all noncitizens present in the United States who have never been inspected or admitted as "applicants for admission" under § 1225. Consequently, it also held that immigration courts lack jurisdiction to conduct bond hearings as to such noncitizens, which is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

a right that they would have pursuant to § 1226(a). *Id.* at 229.

As a matter of statutory interpretation, the construction adopted by the Government and BIA is not persuasive. It reflects an expansive definition of "applicants for admission" that is not supported by the text of the INA. Under the Definitions provision of the INA, 8 U.S.C. § 1101, "[t]he term 'application for admission' has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa." § 1101(a)(4). Further, "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United *States after inspection and authorization by an immigration officer*." § 1101(a)(13)(A) (emphasis added). Accordingly, the focus of § 1225 is on those persons who are arriving at the United States, and who are placed in an inspection and mandatory detention process. *See Jennings*, 583 U.S. at 297 (describing § 1225(b) as applying "primarily to [noncitizens] seeking entry into the United States"). An "applicant for admission," therefore, does not describe a noncitizen like Petitioner who has resided in the United States for many years and was never inspected and deemed inadmissible.

Section 1226 is different. It governs the arrest and detention of noncitizens who are presently in the United States and who were "inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." *Jennings*, 583 U.S. at 288-89. Unlike § 1225, the focus of § 1226 is on those who are "already present in the United States." *Id.* at 303. That § 1226 would provide additional procedural protections for this category of noncitizens comports with long-held principles of constitutional law providing greater due process protections for individuals who are present and established in the United States, than for those who have either not entered or who are at the "threshold of entry." *See Wong Wing v. United States*, 163 U.S. 228, 238 ("It must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even [noncitizens] shall not . . . be deprived of life, liberty, or property without due process of law."); *cf.*, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("While [noncitizens] who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for a[] [noncitizen's] lawful entry into this country and that, as a result, a[] [noncitizen] at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.").

The statutory structure of § 1225 and § 1226 contemplates and addresses a category of noncitizens present in the United States who would have been inadmissible at the time of entry, but who are not "applicants for admission." However, if Respondents' interpretation of the statutes were accepted, an entire portion of § 1226 would not apply. As stated in *Jennings*, § 1226 "governs the process of arresting and detaining" noncitizens who "were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." 583 U.S. at 288. All noncitizens who were "inadmissible at the time of entry" would automatically be deemed "applicants for admission" under § 1225 if Respondents' definition of the term were accepted, and thereby removed from the purview of § 1226. There is no basis to support the view that this is what Congress intended in adopting these two statutes. *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("one of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant") (citations omitted).

A recent amendment to § 1226(c) also supports the coexistence of § 1225 "applicants for admission" and other inadmissible noncitizens to whom § 1226 procedures apply. Although section 1226(a) sets

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

forth a discretionary detention process, § 1226(c) provides an exception that mandates detention for certain noncitizens who have been convicted of crimes. This exception, which was added to the statute in January 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)) (emphasis added). If as the Government contends, every noncitizen who has not been admitted to the United States were considered an "applicant for admission," there would have been no reason for the amendment, because those noncitizens would have already been channeled into the § 1225 mandatory detention procedures. *See Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Other district courts have also determined that the Government's interpretation of § 1225 is overbroad. *E.g., Fernandez v. Knight*, No. 2:25-CV-02221-RFB-BNW, 2025 WL 3485800, at *2 (D. Nev. Dec. 4, 2025). As that court explained:

> The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. *See Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); *see also, Barco Mercado* v. *Francis*, No. 1:25-CV-06[58]2, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district judges finding the application of § 1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief has been granted finding the government's reinterpretation of § 1225(b)(2) unlawful. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

*Id.* at *2.

Because Petitioner has been present in the United States for more than 27 years, and has never been inspected and deemed inadmissible, he is not an "applicant for admission" under § 1225, Instead, the procedures of § 1226 apply. Accordingly, Petitioner is likely to succeed on the merits, and this factor supports the requested injunctive relief.

        b)      Class Certification

Petitioner also contends that he is entitled to relief as a member of the *Bautista* class, which was certified on November 25, 2025. However, because those proceedings are ongoing with respect to that order, and its effect, it is premature to consider this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

      2.    <u>Irreparable Harm</u>

It is well established that unlawful detention constitutes irreparable harm. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

The Ninth Circuit has also identified "irreparable harms imposed on anyone subject to immigration detention," including less access to medical care in detention facilities, economic burdens on detainees and their families, and harms to children whose parents are detained. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Since his detention, Petitioner contends that his health condition has declined. Dkt. 2 at 11. He claims to have lost vision in one of his eyes, and to have experienced what his optical health provider has deemed to be warning signs of glaucoma. *Id.* at 11-12. He also asserts that he has been unable to receive the level of medical care or medications that are required due to his health conditions. *Id.* at 11. Further, Petitioner claims to be the primary source of financial support for other members of his family. *Id.* at 12. He argues that, while he is in detention, his family faces emotional and financial stress. These are harms and economic burdens that *Hernandez* recognized as "irreparable." 872 F.3d at 995.

Based on the foregoing, this factor supports the requested injunctive relief.

      3.    <u>Balance of Equities and the Public Interest</u>

As to the balance of equities and public interest, these factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). "It is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (quoting *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011)). This is confirmed by the requested relief. It is not for the immediate release of Petitioner, but instead to have the statutorily required opportunity for a bond hearing, at which the potential release of Petitioner pending a removal decision will be addressed based on a consideration of the applicable factors presented by the parties.

Based on the foregoing, this factor supports the requested injunctive relief.

             \*             \*             \*

Because all of the *Winter* factors support the requested relief, it is warranted. Accordingly, it is unnecessary to conduct an analysis under *Cottrell.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-03313-JAK (Ex) | Date | December 12, 2025 |
|---|---|---|---|
| Title | Jose Ernesto Bermudez De Eugenio v. Kristi Noem et al. | | |

**V.     Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED**. Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of this Order.[1] Within eight days of the issuance of this Order, Respondents shall file a status report as to whether the bond hearing has occurred, and if not, the date for which it has been scheduled. If it has occurred, the report shall include a statement as to its outcome. If the bond hearing has occurred, and the request for a bond was denied, or if occurs subsequently, and is denied, within five court days after the denial, and after meeting and conferring, the parties shall submit a joint report stating their respective and/or collective positions as to the status of the medical care that is being provided to Petitioner.

Respondents are ordered to show cause why a preliminary injunction should not issue. *See* C.D. Cal. L. R. 65-1. Respondents shall file any written response to the Order to Show Cause ("OSC") no later than December 22, 2025. Petitioner shall file any reply no later than December 29, 2025. If either or both parties elect to rely on the current briefing with respect to the OSC, they may do so, and should file a corresponding notice on or before the due date for their respective briefs. Further, in light of the upcoming holiday period, if after meeting and conferring, the parties stipulate to an extension of these deadlines, they shall submit such a stipulation and proposed order on or before December 17, 2025. Based on a review of the briefing on the OSC, a determination will be made whether to schedule a hearing or to take the matter under submission.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | LC1 | |

---

[1] This time period is based on the request in the Motion, which is warranted, and to which Respondents did not make any specific objection.